## IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| SUSANNE SIMMS,<br><br>          Plaintiff,<br><br>  v.<br><br>FOAMIX PHARMACEUTICALS LTD.,<br>STANLEY HIRSCH, STANLEY STERN,<br>REX BRIGHT, ANNA KAZANCHYAN,<br>TONY BRUNO, DAVID DOMZALSKI,<br>AARON SCHWARTZ, and SHARON<br>BARBARI,<br><br>          Defendants. | Civil Action No.<br><br>**COMPLAINT FOR VIOLATIONS<br>OF THE FEDERAL SECURITIES<br>LAWS**<br><br><br>**JURY TRIAL DEMANDED** |

Plaintiff Susanne Simms ("Plaintiff") by and through her undersigned attorneys, brings this action on behalf of herself, and alleges the following based upon personal knowledge as to those allegations concerning Plaintiff and, as to all other matters, upon the investigation of counsel, which includes, without limitation: (a) review and analysis of public filings made by Foamix Pharmaceuticals Ltd. ("Foamix" or the "Company") and other related parties and non-parties with the United States Securities and Exchange Commission ("SEC"); (b) review and analysis of press releases and other publications disseminated by certain of the Defendants (defined below) and other related non-parties; (c) review of news articles, shareholder communications, and postings on the Company's website concerning the Company's public statements; and (d) review of other publicly available information concerning Foamix and the Defendants.

## SUMMARY OF THE ACTION

1.      This is an action brought by Plaintiff against Foamix and the Company's Board of Directors (the "Board" or the "Individual Defendants") for their violations of Section 14(a) and 20(a) of the Securities Exchange Act of 1934, 15.U.S.C. §§ 78n(a), 78t(a), and SEC Rule 14a-9, 17 C.F.R. 240.14a-9, in connection with the proposed sale of the Company to Menlo Therapeutics Inc. ("Parent"), and Giants Merger Subsidiary Ltd. ("Merger Sub," and along with Parent, "Menlo") (the "Proposed Transaction").

2.      On November 10, 2019, the Company entered into an Agreement and Plan of Merger (the "Merger Agreement") with Menlo.  Pursuant to the Merger Agreement, the Company's shareholders will receive 0.5924 shares of Menlo common stock and one contingent stock right for each share of the Company's common stock owned (the "Merger Consideration").

3.      On December 4, 2019, in order to convince the Company's shareholders to vote in favor of the Proposed Transaction, the Board authorized the filing of a materially incomplete and misleading registration statement of Form S-4 with the SEC (the "Registration Statement"), in violation of Sections 14(a) and 20(a) of the Exchange Act.

4.      For these reasons, and as set forth in detail herein, Plaintiff asserts claims against Foamix and the Board for violations of Sections 14(a) and 20(a) of the Exchange Act and Rule 14a-9.  Plaintiff seeks to enjoin Defendants from taking any steps to consummate the Proposed Transaction unless and until the material information discussed below is disclosed to Foamix shareholders before the vote on the Proposed Transaction or, in the event the Proposed Transaction is consummated, recover damages resulting from the Defendants' violations of the Exchange Act.

## JURISDICTION AND VENUE

5.      This Court has subject matter jurisdiction over all claims asserted herein pursuant to Section 27 of the Exchange Act, 15 U.S.C § 78aa, and 28 U.S.C. § 1331, as Plaintiff alleges violations of Sections 14(a) and 20(a) of the Exchange Act.

6.      This Court has personal jurisdiction over all of the Defendants because each is either a corporation that conducts business in, solicits shareholders in, and/or maintains operations within, this District, or is an individual who is either present in this District for jurisdictional purposes or has sufficient minimum contacts with this District so as to make the exercise of jurisdiction by this Court permissible under traditional notions of fair play and substantial justice.

7.      Venue is proper under 28 U.S.C. § 1391 because a substantial portion of the transactions and wrongs complained of herein occurred in this District.   In addition, the Company's stock trades on the NASDAQ Global Market ("NASDAQ"), which is headquartered in this District.

## THE PARTIES

8.      Plaintiff is, and has been at all times relevant hereto, the owner of Foamix shares.

9.      Defendant Foamix is incorporated under the laws of Delaware and has its principal executive offices located at 2 Holzman Street, Weizmann Science Park, Rehovot, Israel.  The Company's common stock trades on the NASDAQ under the symbol "FOMX."

10.      Defendant Stanley Hirsch ("Hirsch") is and has been the Chairman of the Company's Board at all times during the relevant time period.

11.      Defendant Stanley Stern ("Stern") is and has been a director of Foamix at all times during the relevant time period.

12.     Defendant Rex Bright ("Bright") is and has been a director of Foamix at all times during the relevant time period.

13.     Defendant Anna Kazanchyan ("Kazanchyan") is and has been a director of Foamix at all times during the relevant time period.

14.     Defendant Tony Bruno ("Bruno") is and has been a director of Foamix at all times during the relevant time period.

15.     Defendant David Domzalski ("Domzalski") is and has been the Company's Chief Executive Officer and a director of the Company at all times during the relevant time period.

16.     Defendant Aaron Schwartz ("Schwartz") is and has been a director of Foamix at all times during the relevant time period.

17.     Defendant Sharon Barbari ("Barbari") is and has been a director of Foamix at all times during the relevant time period.

18.     Defendants Hirsch, Stern, Bright, Kazanchyan, Bruno, Domzalski, Schwartz, and Barbari are collectively referred to herein as the "Individual Defendants."

19.     The Individual Defendants, along with Defendant Foamix, are collectively referred to herein as "Defendants."

## SUBSTANTIVE ALLEGATIONS

### Background of the Company

20.     Foamix is a specialty pharmaceutical company focusing on some of today's most difficult therapeutic challenges in dermatology and beyond. Foamix was incorporated in 2003 in the State of Israel and Foamix's shares have traded on Nasdaq under the symbol "FOMX" since its initial public offering in September 2014.

21.     Foamix's first product, AMZEEQTM (minocycline) topical foam, 4% (formerly FMX101) ("AMZEEQTM"), a once-daily topical antibiotic for the treatment of inflammatory lesions of non-nodular moderate to severe acne vulgaris in patients 9 years of age and older, was approved by the U.S. Food and Drug Administration ("FDA") in October 2019. Foamix expects to launch AMZEEQTM in the U.S. in the first quarter of 2020. Foamix's late-stage product candidate, FMX103 (minocycline) topical foam, 1.5% ("FMX103"), is being developed for the treatment of moderate-to-severe papulopustular rosacea in adults. Foamix submitted the FMX103 New Drug Application ("NDA") in August 2019 and, in October 2019, the FDA set the Prescription Drug Free User Fee Act ("PDUFA") action date for the completion of the FDA's review of the FMX103 NDA for June 2, 2020.

22.     Foamix is currently developing a pipeline of other product candidates and delivery platforms, including FCD105, a topical combination foam for the treatment of moderate-to-severe acne vulgaris, composed of minocycline 3% and adapalene 0.3%, its *Molecule Stabilizing Technology (MST*TM*)* vehicle, used to develop AMZEEQ$^{TM}$ and FMX103 and other topical delivery platforms.

**The Company Announces the Proposed Transaction**

23.     On November 11, 2019, the Company jointly issued a press release announcing the Proposed Transaction.  The press release stated in part:

REHOVOT, Israel, BRIDGEWATER, N.J. and REDWOOD CITY, Calif., Nov. 11, 2019 (GLOBE NEWSWIRE) -- Foamix Pharmaceuticals Ltd. (Nasdaq: FOMX ) ("Foamix") and Menlo Therapeutics Inc. (Nasdaq: MNLO) ("Menlo") today announced that they have signed a definitive merger agreement to create a combined biopharmaceutical company focused on the commercialization and development of therapeutics to serve patients in the dermatology space. The Boards of Directors of both Foamix and Menlo have unanimously approved the transaction.

The combined company will have a diversified portfolio including an approved product and three late-stage product candidates focused on dermatologic indications.

Foamix recently received FDA approval for AMZEEQ™ (minocycline) topical foam, 4%, for the treatment of inflammatory lesions of non-nodular moderate-to-severe acne vulgaris in adults and pediatric patients 9 years of age and older. AMZEEQ™ is the first topical formulation of minocycline. Foamix is finalizing the implementation of the commercial infrastructure in preparation for a U.S. commercial launch anticipated in January 2020.

Foamix recently submitted a New Drug Application to the U.S. Food and Drug Administration (FDA) for FMX103 (minocycline) topical foam, for the treatment of moderate-to-severe papulopustular rosacea. The FDA set a Prescription Drug User Fee Act action date of June 2nd, 2020. If approved, FMX103 would be the first minocycline product available for rosacea patients. Foamix is also conducting a Phase II trial for FCD105, a topical combination foam of minocycline and adapalene, currently being evaluated for the treatment of moderate-to-severe acne vulgaris.

Menlo's lead late stage product candidate, serlopitant, is being developed as a novel treatment for pruritus (itch). Two Phase III clinical trials of serlopitant for the treatment of pruritus associated with prurigo nodularis ("PN") are fully enrolled, with results expected in March or April 2020. Serlopitant has received Breakthrough Therapy Designation by the FDA for the treatment of pruritus associated with PN and has the potential to be the first approved therapy for this indication. Serlopitant is also being evaluated for chronic pruritus of unknown origin ("CPUO"), currently in Phase II clinical trials, and for pruritus associated with psoriasis, which had positive Phase II data.

The combined company has a compelling product portfolio and late-stage pipeline. There are multiple near-term milestones:

- Commercial launch of AMZEEQ™ anticipated in January 2020
- Phase II clinical trial results for serlopitant for the treatment of CPUO in January or February 2020
- Phase III clinical trial results in the U.S. and Europe for serlopitant for the treatment of pruritus in PN in March or April 2020
- FMX103 PDUFA action date of June 2, 2020
- Phase II clinical trial results for FCD105 for treatment of moderate to severe acne with top-line data expected in mid-2020
- NDA submission, assuming Phase III success for serlopitant for the treatment of pruritus in PN, in H2 2020

## Rationale for the Transaction

The rationale for this transaction is to create value for the combined shareholders of Foamix and Menlo that can be more advantageous together than separately through several synergies:

- Commercial leverage: Foamix's dermatology sales and marketing organization can more effectively launch Menlo's near-term potential breakthrough product for pruritus associated with PN
- Cost savings: by utilizing Foamix's commercial organization and G&A infrastructure, the companies could save approximately $50 million per year versus the stand-alone estimated duplicate organization costs in future years
- Reduced financing need: the combined cash from the companies provides runway through H1 2021
- Creates a leading dermatology company with multiple products

## Transaction Details

The transaction is structured as a stock-for-stock exchange, enabling the Foamix and Menlo shareholders to share in the upside advantages of combining the companies. Recognizing the near term data coming from Menlo's Phase III trials in PN, the transaction accounts for the data outcomes by providing a premium to Menlo in the event that both trials are successful, while creating a mechanism to provide more shares to Foamix shareholders to provide downside adjustment if one or both PN trials do not hit their primary endpoint.

Under the terms of the merger agreement, each share of Foamix stock will be exchanged for 0.5924 of a share of Menlo common stock and a contingent stock right ("CSR"). The exchange ratio (prior to any adjustment through the CSR) implies a 18% premium to Menlo shareholders based upon the 10-day average volume weighted trading price for each company. Foamix shareholders will own approximately 59% of the combined company and Menlo shareholders will own approximately 41% on a pro forma, fully diluted basis, giving effect to all dilutive stock options at the time of announcement, units and warrants but without taking into account any adjustment to the exchange ratio or through the CSR. The exchange ratio or CSR may result in the delivery of additional shares of Menlo common stock to Foamix shareholders dependent upon the Phase III trial results for serlopitant for the treatment of pruritus in PN. There are certain adjustments to the ownership levels for each company's shareholders as follows that result from an adjustment to the exchange ratio under the Merger Agreement prior to closing or post-closing through the issuance of CSRs to Foamix shareholders:

- If one of the Phase III PN trials fails to meet its primary endpoint at or before May 31, 2020, Foamix shareholders will receive an additional 0.6815 of a share of Menlo common stock for each

Foamix share, increasing pro forma ownership of the combined company by Foamix shareholders to 76%

- If both Phase III PN trials fail to meet their primary endpoints at or before May 31, 2020, Foamix shareholders will receive 1.2082 additional Menlo shares for each Foamix share, increasing pro forma ownership of the combined company by Foamix shareholders to 82%

- If both the Phase III PN trials are successful with results announced by May 31, 2020, then no additional Menlo shares will be issued to Foamix shareholders and pro forma ownership by Foamix shareholders will remain 59%

- In the event that the results of the Phase III PN trials are received prior to closing (or if the results of neither trial has been announced by May 31, 2020 and the closing occurs thereafter), then the exchange ratio will be amended based on the clinical trial results and no CSRs will be issued.

The adjustments to ownership levels were designed with the intent of providing protection to Foamix shareholders in the event that either of these important serlopitant clinical trials were not successful. To the extent the CSRs are issued, they will not be registered or separately tradeable, and there will be restrictions on their transfer.

The combined company will be led by David Domzalski, CEO of Foamix and headquartered in New Jersey. The board of the combined company will consist of five members designated by Foamix (including Mr. Domzalski) and two members designated by Menlo (including Steve Basta, its CEO).

The transaction is subject to approval of the merger by Foamix shareholders, approval of the share issuance to Foamix shareholders by Menlo stockholders, as well as regulatory approvals and satisfaction of other customary closing conditions. Certain significant shareholders of Foamix and Menlo, together with the CEOs of both companies, have entered into agreements, whereby they have agreed to vote the shares they hold at the time of the shareholder meeting in favor of the merger and/or share issuance (subject to limited exceptions). The transaction is expected to be completed in late Q1/early Q2 of 2020.

## FALSE AND MISLEADING STATEMENTS
## AND/OR MATERIAL OMISSIONS IN THE REGISTRATION STATEMENT

24. On December 4, 2019, the Company authorized the filing of the Registration Statement with the SEC. The Registration Statement recommends that the Company's shareholders vote in favor of the Proposed Transaction.

25.     Defendants were obligated to carefully review the Registration Statement prior to its filing with the SEC and dissemination to the Company's shareholders to ensure that it did not contain any material misrepresentations or omissions.   However, the Registration Statement misrepresents and/or omits material information that is necessary for the Company's shareholders to make informed decisions regarding whether to vote in favor of the Proposed Transaction, in violation of Sections 14(a) and 20(a) of the Exchange Act.

## Material False and Misleading Statements or Material
### Misrepresentations or Omissions Regarding Management's Financial Projections

26.     The Registration Statement contains projections prepared by Menlo's and the Company's management concerning the Proposed Transaction, but fails to provide material information concerning such.

27.     The SEC has repeatedly emphasized that disclosure of non-GAAP projections can be inherently misleading, and has therefore heightened its scrutiny of the use of such projections.[1]  Indeed, on May 17, 2016, the SEC's Division of Corporation Finance released new and updated Compliance and Disclosure Interpretations ("C&DIs") on the use of non-GAAP financial measures that demonstrate the SEC's tightening policy.[2] One of the new C&DIs regarding forward-looking information, such as financial projections, explicitly requires companies to provide any reconciling metrics that are available without unreasonable efforts.

---

[1] *See, e.g.*, Nicolas Grabar and Sandra Flow, Non-GAAP Financial Measures: The SEC's Evolving Views, Harvard Law School Forum on Corporate Governance and Financial Regulation (June 24, 2016), *available at* https://corpgov.law.harvard.edu/2016/06/24/non-gaap-financial-measuresthesecs evolving-views/; Gretchen Morgenson, Fantasy Math Is Helping Companies Spin Losses Into Profits, N.Y. Times, Apr. 22, 2016, available at http://www.nytimes.com/2016/04/24/business/fantasy-mathis-helping-companies-spin-ossesinto-profits.html?_r=0.

[2] Non-GAAP Financial Measures, Compliance & Disclosure Interpretations, U.S. SECURITIES AND EXCHANGE COMMISSION (May 17, 2017), *available at* https://www.sec.gov/divisions/corpfin/guidance/nongaapinterp.htm.

28.     In order to make management's projections included in the Registration Statement materially complete and not misleading, Defendants must provide a reconciliation table of the non-GAAP measures to the most comparable GAAP measures.

29.     Specifically, with respect to both Menlo and the Company's financial projections, the Company must disclose the line item projections for the financial metrics that were used to calculate the non-GAAP measures, including: (i) EBIT; and (ii) unlevered free cash flow.

30.     Disclosure of the above information is vital to provide investors with the complete mix of information necessary to make an informed decision when voting on the Proposed Transaction.

**Material False and Misleading Statements or Material
Misrepresentations or Omissions Regarding Barclays' Financial Opinion**

31.     The Registration Statement contains the financial analyses and opinion of Barclays Bank PLC ("Barclays") concerning the Proposed Transaction, but fails to provide material information concerning such.

32.     With respect to Barclays' *Discounted Cash Flow Analysis* for the Company, the Registration Statement fails to disclose: (i) the line items used in calculating the Company's projected after tax probability adjusted unlevered free cash flows for fiscal years 2020 to 2024; (ii) the Company's terminal value; (iii) Barclays' basis for the selection of a range of 1.0% to 3.0% of annual growth rates for the Company; and (iv) the inputs and assumptions underlying the range of after-tax discount rates of 12.0% to 14.0%.

33.     With respect to Barclays' *Discounted Cash Flow Analysis* for Menlo (Phase III PN Trials "Full Success"), the Registration Statement fails to disclose: (i) the line items used in calculating Menlo's projected after-tax probability adjusted unlevered free cash flows for fiscal years 2020 to 2035; (ii) Menlo's terminal value; (iii) Barclays' basis for selection of a range of  -

10.0% to 0.0% of annual growth rates for Menlo; and (iv) the inputs and assumptions underlying the range of after-tax discount rates of 12.0% to 14.0%.

34.     With respect to Barclays' *Discounted Cash Flow Analysis* for Menlo (Phase III PN Trials "Partial Success"), the Registration Statement fails to disclose: (i) the line items used in calculating Menlo's projected after-tax probability adjusted unlevered free cash flows for fiscal years 2020 to 2035; (ii) Menlo's terminal value; (iii) Barclays' basis for selection of a range of -10.0% to 0.0% of annual growth rates for Menlo; and (iv) the inputs and assumptions underlying the range of after-tax discount rates of 12.0% to 14.0%.

35.     When a banker's endorsement of the fairness of a transaction is touted to shareholders, the valuation methods used to arrive at that opinion as well as the key inputs and range of ultimate values generated by those analyses must also be fairly disclosed.  Moreover, the disclosure of projected financial information is material because it provides shareholders with a basis to project the future financial performance of a company and allows shareholders to better understand the financial analyses performed by the Company's financial advisor in support of its fairness opinion.

36.     Without the above described information, the Company's shareholders are unable to cast a fully informed vote on the Proposed Transactions.  Accordingly, in order to provide shareholders with a complete mix of information, the omitted information described above should be disclosed.

## COUNT I

### (Against All Defendants for Violations of Section 14(a) of the Exchange Act and Rule 14a-9 Promulgated Thereunder)

37.     Plaintiff incorporates each and every allegation set forth above as if fully set forth herein.

38.     Section 14(a)(1) of the Exchange Act makes it "unlawful for any person, by the use of the mails or by any means or instrumentality of interstate commerce or of any facility of a national securities exchange or otherwise, in contravention of such rules and regulations as the Commission may prescribe as necessary or appropriate in the public interest or for the protection of investors, to solicit or to permit the use of his name to solicit any proxy or consent or authorization in respect of any security (other than an exempted security) registered pursuant to section 78l of this title." 15 U.S.C. § 78n(a)(1).

39.     Rule 14a-9, promulgated by the SEC pursuant to Section 14(a) of the Exchange Act, provides that communications with stockholders in a recommendation statement shall not contain "any statement which, at the time and in the light of the circumstances under which it is made, is false or misleading with respect to any material fact, or which omits to state any material fact necessary in order to make the statements therein not false or misleading." 17 C.F.R. § 240.14a-9.

40.     Defendants have issued the Registration Statement with the intention of soliciting shareholders support for the Proposed Transaction. Each of the Defendants reviewed and authorized the dissemination of the Registration Statement, which fails to provide critical information regarding, among other things, the financial projections for the Company.

41.     In so doing, Defendants made untrue statements of fact and/or omitted material facts necessary to make the statements made not misleading. Each of the Defendants, by virtue of their roles as officers and/or directors, were aware of the omitted information but failed to disclose such information, in violation of Section 14(a). The Defendants were therefore negligent, as they had reasonable grounds to believe material facts existed that were misstated or omitted from the Registration Statement, but nonetheless failed to obtain and disclose such

information to shareholders although they could have done so without extraordinary effort.

42.     The Defendants knew or were negligent in not knowing that the Registration Statement is materially misleading and omits material facts that are necessary to render it not misleading. The Defendants undoubtedly reviewed and relied upon the omitted information identified above in connection with their decision to approve and recommend the Proposed Transaction.

43.     The Defendants knew or were negligent in not knowing that the material information identified above has been omitted from the Registration Statement, rendering the sections of the Registration Statement identified above to be materially incomplete and misleading. Indeed, the Defendants were required to be particularly attentive to the procedures followed in preparing the Registration Statement and review it carefully before it was disseminated, to corroborate that there are no material misstatements or omissions.

44.     The Defendants were, at the very least, negligent in preparing and reviewing the Registration Statement. The preparation of a registration statement by corporate insiders containing materially false or misleading statements or omitting a material fact constitutes negligence. The Defendants were negligent in choosing to omit material information from the Registration Statement or failing to notice the material omissions in the Registration Statement upon reviewing it, which they were required to do carefully as the Company's directors. Indeed, the Defendants were intricately involved in the process leading up to the signing of the Merger Agreement and the preparation of the Company's financial projections.

45.     The misrepresentations and omissions in the Registration Statement are material to Plaintiff, who will be deprived of his right to cast an informed vote if such misrepresentations and omissions are not corrected prior to the vote on the Proposed Transaction.

46.     Plaintiff has no adequate remedy at law. Only through the exercise of this Court's equitable powers can Plaintiff be fully protected from the immediate and irreparable injury that Defendants' actions threaten to inflict.

**COUNT II**

**(Against the Individual Defendants for
Violations of Section 20(a) of the Exchange Act)**

47.     Plaintiff incorporates each and every allegation set forth above as if fully set forth herein.

48.     The Individual Defendants acted as controlling persons of Foamix within the meaning of Section 20(a) of the Exchange Act as alleged herein. By virtue of their positions as officers and/or directors of Foamix, and participation in and/or awareness of the Company's operations and/or intimate knowledge of the incomplete and misleading statements contained in the Registration Statement filed with the SEC, they had the power to influence and control and did influence and control, directly or indirectly, the decision making of the Company, including the content and dissemination of the various statements that Plaintiff contends are materially incomplete and misleading.

49.     Each of the Individual Defendants was provided with, or had unlimited access to, copies of the Registration Statement and other statements alleged by Plaintiff to be misleading prior to and/or shortly after these statements were issued and had the ability to prevent the issuance of the statements or cause the statements to be corrected.

50.     In particular, each of the Individual Defendants had direct and supervisory involvement in the day-to-day operations of the Company, and, therefore, is presumed to have had the power to control or influence the particular transactions giving rise to the Exchange Act violations alleged herein, and exercised the same. The Registration Statement at issue contains

the unanimous recommendation of each of the Individual Defendants to approve the Proposed Transaction. They were thus directly involved in preparing this document.

51.     In addition, as set forth in the Registration Statement sets forth at length and described herein, the Individual Defendants were involved in negotiating, reviewing, and approving the Merger Agreement. The Registration Statement purports to describe the various issues and information that the Individual Defendants reviewed and considered. The Individual Defendants participated in drafting and/or gave their input on the content of those descriptions.

52.     By virtue of the foregoing, the Individual Defendants have violated Section 20(a) of the Exchange Act.

53.     As set forth above, the Individual Defendants had the ability to exercise control over and did control a person or persons who have each violated Section 14(a) and Rule 14a-9 by their acts and omissions as alleged herein. By virtue of their positions as controlling persons, these Defendants are liable pursuant to Section 20(a) of the Exchange Act. As a direct and proximate result of Individual Defendants' conduct, Plaintiff will be irreparably harmed.

54.     Plaintiff has no adequate remedy at law. Only through the exercise of this Court's equitable powers can Plaintiff be fully protected from the immediate and irreparable injury that Defendants' actions threaten to inflict.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff prays for judgment and relief as follows:

A.     Preliminarily and permanently enjoining Defendants and all persons acting in concert with them from proceeding with, consummating, or closing the Proposed Transaction;

B.     Directing the Individual Defendants to disseminate an Amendment to the Registration Statement that does not contain any untrue statements of material fact and that states

all material facts required in it or necessary to make the statements contained therein not misleading;

C.      Directing Defendants to account to Plaintiff for all damages sustained because of the wrongs complained of herein;

D.      Awarding Plaintiff the costs of this action, including reasonable allowance for Plaintiff's attorneys' and experts' fees; and

E.      Granting such other and further relief as this Court may deem just and proper.

**JURY DEMAND**

Plaintiff demands a trial by jury on all issues so triable.

Dated: December 17, 2019                          Respectfully submitted,


By: */s/ Joshua M. Lifshitz*
Joshua M. Lifshitz
Email: jml@jlclasslaw.com
**LIFSHITZ & MILLER LLP**
821 Franklin Avenue, Suite 209
Garden City, New York 11530
Telephone: (516) 493-9780
Facsimile: (516) 280-7376

*Attorneys for Plaintiff*